## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GABRIEL ROSA-DIAZ,** | : | **Civil No. 1:17-CV-2215** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **LAUERL HARRY, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Factual Background

This case comes before us for a legally-mandated screening review. The plaintiff, Gabriel Rosa-Diaz, is a state inmate who alleges that he was housed at the State Correctional Institution, Camp Hill from April 2016 through June 2017. (Doc. 1, ¶¶ 37, 240.) Rosa-Diaz has now filed a 102-page, 282-paragraph civil complaint which names 34 correctional officials at SCI Camp Hill as defendants and contains a catalogue of complaints against these correctional officials and supervisors.

While the sheer volume and prolixity of this civil complaint defies any attempt at easy summary, our review of the complaint suggests that broadly speaking Rosa-Diaz is advancing at least the following seven disparate claims and complaints in this lawsuit:

First, during the 14 months that Rosa-Diaz was housed at SCI Camp Hill he alleges that he was denied recreation privileges on approximately 12 occasions due to disputes between Rosa-Diaz and staff regarding his attire, the condition of his cell, and his compliance with staff instructions. Rosa-Diaz alleges that this conduct rose to the level of cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. (Id., ¶¶ 37-105.)

Second, between January 4 and January 30, 2017, this simmering dispute between Rosa-Diaz and staff over his footwear and apparel allegedly led staff to deny the plaintiff 5 meals over a 26-day period, conduct which Rosa-Diaz also asserts rose to the level of cruel and unusual punishment. (Id., ¶¶ 118-181.)

Third, Rosa-Diaz alleges that prison health care providers displayed deliberate indifference to various podiatric problems he was experiencing in late December of 2016 and early 2017. (Id., ¶¶ 108-116, 182-89.)

Fourth, Rosa-Diaz alleges that he was moved into a cell that lacked hot water, ventilation, and was smeared with human waste in March and April of 2017, and was then denied cleaning supplies, in retaliation for his past grievance activity, and in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. (Id., ¶¶ 190-234.)

Fifth, Rosa-Diaz alleges that he was verbally harassed by staff. (Id., ¶ 225.)

Sixth, Rosa-Diaz has asserted that this array of activity was undertaken by Superintendent Harry and others specifically in order to retaliate against the plaintiff due to his prior petitioning and litigation activities. (Id., *passim* and ¶¶ 235-249.)

Seventh, Rosa-Diaz alleges that in May of 2017, as a Protestant he engaged in a religious exercise, a fast, and refused to be touched by medical personnel who were monitoring his condition while he was fasting. According to Rosa-Diaz, staff violated his First Amendment rights by forcibly subduing him in order to allow medical staff to stake his vital signs. (Id., ¶¶ 250-261.)

As a result of these alleged constitutional infractions, Rosa-Diaz seeks wide-ranging injunctive relief, along with compensatory and punitive damages. (Id.) Rosa-Diaz demands injunctive relief form the defendants at SCI Camp Hill even though he acknowledges that he is no longer housed at that facility.

Along with this complaint, Rosa-Diaz has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) We will GRANT this motion, but for the reasons set forth below, we recommend that a number of the claims set forth in this complaint be dismissed.

## II. Discussion

### A. Screening of *Pro Se* Complaints–Standard of Review

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases that seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). This Court also has a statutory obligation to conduct a preliminary review of *pro se* complaints filed by prisoners who seek leave to proceed *in forma pauperis* where the complaints seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.
>
> 28 U.S.C. § 1915A.

Thus, in this case we are obliged to review the complaint to determine whether any claims are frivolous, malicious, or fail to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in Phillips [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel,</u>

Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

> Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

> Fowler, 578 F.3d at 210-11.

Two years after Fowler, the Third Circuit further observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'"

<u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id</u>. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." <u>Id</u>.

<u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the

requirements of Rule 8(a) of the Federal Rule of Civil Procedure, which defines

what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

8

Fed. R. Civ. P. 8.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal guideposts, for the reasons set forth below it is recommended that a number of claims in this complaint be dismissed.

     **B.**      **In its Current Form, Many Allegations Set forth in Rosa-Diaz's Complaint Fail to State a Claim Upon Which Relief May Be Granted**

In this case in its current form, many of the allegations set forth in Rosa-Diaz's complaint run afoul of significant legal obstacles. Indeed, as set forth below, the complaint is fatally flawed in at least four different ways.

     **1.**      **Many of these Claims Are Not Properly Joined in a Single Complaint and the Current Misjoined Complaint Should be Dismissed Without Prejudice to the Filing of These Separate Claims in Distinct Complaints**

As a threshold matter, we note that this complaint is marked by a hopelessly confusing conflation of claims, combining multiple different accusations leveled against 34 separate defendants. These allegations relate to disparate episodes that

are distinct in time and place, entail different legal claims, and often involved different and unrelated actors. Thus, there is no single, coherent legal, logical, topical or temporal connection between these various claims beyond Rosa-Diaz's subjective sense of aggrievement.

Without some further articulation of a unifying theme or thread between these claims, the joinder of these plainly divergent claims in a single lawsuit is inappropriate under Rule 20 of the Federal Rules of Civil Procedure, the rule governing joinder of defendants in federal litigation, which provides, in part, that:

> Person[s] ... may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

In this case, it cannot be said from the complaint that all of these allegations which span more than one year and entail at least 34 named defendants arise out of the same transaction, occurrence or series of transactions or occurrences. Quite the contrary, these episodes appear to be entirely separate transactions, allegedly committed by different actors at divergent times and places. "[G]iven the

hodgepodge of claims raised in the ... complaint," <u>Boretsky v. Governor of New Jersey</u>, 433 F. App'x 73, 77 (3d Cir. 2011), this Court may properly, in the exercise of its discretion, dismiss this complaint, and require Rosa-Diaz to file separate complaints relating to what seem to be factually distinct claims. <u>Id</u>.

We recommend that the district court adopt this course in the instant case. In order to add clarity to these claims we recommend that, once the Court has conducted a threshold merits analysis of these individual claims, the Court also consider exercising its discretion by following the course permitted by Rule 20, and dismissing any remaining, and apparently misjoined, claims in Rosa-Diaz's amended complaint without prejudice to Rosa-Diaz filing separate complaints relating to what seem to be factually distinct claims. <u>See</u> <u>Johnson v. Chambers</u>, No. 1:11-CV-831, 2012 WL 398335, at *16 (M.D. Pa. Jan. 20, 2012), <u>report and recommendation adopted</u>, No. 1:11-CV-831, 2012 WL 398309 (M.D. Pa. Feb. 7, 2012), <u>aff'd</u>, 487 F. App'x 693 (3d Cir. 2012).

## 2. <u>The Requests for Injunctive Relief Are Moot</u>

We also find that the plaintiff's June 2017 transfer from SCI Camp Hill renders moot his current request for injunctive relief from the defendants, corrections officials at this prison who formerly oversaw the conditions of the plaintiff's imprisonment at that particular facility.

The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). In this case, Rosa-Diaz sought to enjoin prison officials to provide him with specific forms of care, housing and conditions of confinement while he was in prison, yet it is entirely undisputed that the plaintiff is no longer in the defendants' custody and, therefore, no longer receives these services from the prison defendants named in this case.

This simple fact raises a threshold, and insurmountable, obstacle to this motion for injunctive relief relating to conditions at a prison where he is no longer incarcerated. Upon consideration, we conclude that the plaintiff's transfer from SCI Camp Hill renders his motion for injunctive relief moot, and this prayer for relief should be dismissed. In this setting, the Third Circuit has observed that, when addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates' claims are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotations omitted); see also Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Abdul-Akbar, 4 F.3d at 197 (former inmate's claim that the

prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003); see Griffin v. Beard, 401 F. App'x 715, 716-17 (3d Cir. 2010) (transfer from SCI Huntingdon renders inmate injunctive relief claim moot). Indeed, as this court has previously observed, in a case such as this, where an inmate seeks injunctive relief against his jailers but is no longer housed at the prison where these injunctive claims arose:

> [H]is request[] to enjoin the defendants from interfering with his [rights] is academic. See Muslim v. Frame, 854 F.Supp. 1215, 1222 (E.D. Pa. 1994). In other words, [the prisoner-plaintiff's] transfer to another institution moots any claims for injunctive or declaratory relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3rd Cir. 1993); Weaver v. Wilcox, 650 F.2d 22, 27 (3rd Cir. 1981).
>
> Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998).

These principles control here, and compel dismissal of this prayer for injunctive relief as moot since the prisoner-plaintiff is no longer housed at SCI Camp Hill.

### 3.   The Plaintiff's Verbal Harassment Claim Is Unavailing

Moreover, the plaintiff may not premise a constitutional claim on alleged verbal harassment standing alone, as he apparently attempts to do in this complaint. This claim warrants only brief consideration since: "It is well settled

that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006) (citing McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)); see, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007). Thus to the extent that the plaintiff alleges that he was verbally harassed by staff, given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), this verbal harassment allegation fails to state a constitutional claim. Mimms v. U.N.I.C.O.R., 386 F. App'x 32, 35 (3d Cir. 2010) (verbal harassment of a prisoner, without more, does not violate the Eighth Amendment); Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009) (verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment).

**4.** **The Isolated Denials of Meals and Recreation Alleged by Rosa-Diaz Do Not Rise to the Level of an Eighth Amendment Violation**

Furthermore, Rosa-Diaz's allegations that he was denied meals and recreation privileges on a handful of occasions spanning the 14 months that he was housed at SCI Camp Hill, by themselves, do not state a colorable Eighth Amendment violation. "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Thus, "[t]he objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'" Fuentes, 206 F.3d at 345 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

> Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims require proof of both a culpable state of mind, and objective proof of physical conditions of confinement that shock the conscious and

depart from minimal civilized standards of life's necessities. In short, conditions of

confinement claims like those made here are judged against precise and exacting

legal standards. As the United States Supreme Court has observed:

> The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling, 509 U.S., at 31, 113 S.Ct., at 2480. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). *The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food*, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).

> Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L.Ed. 2d 811 (1994) (emphasis added).

By specifically identifying a constitutional obligation to provide adequate

food to inmates, the courts have acknowledged that the denial of food to prisoners

can, on occasion, rise to the level of an Eighth Amendment violation. Yet, "while

prisoners are guaranteed a nutritionally adequate diet under the Eighth

Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980), there is no

constitutional right to hot meals." Laufgas v. Speziale, 263 F. App'x. 192, 198 (3d

Cir. 2008) (citing <u>Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th Cir. 1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)). Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation." <u>Lindsey v. O'Connor</u>, 327 F. App'x. 319, 321 (3d Cir. 2009) (citing <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir. 1983) (finding that only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)). Instead, only "[a] systematic failure to provide food in sufficient quantity to maintain normal health violates the Eighth Amendment." <u>Feliciano v. Burset</u>, CIV. 79-4 PG, 2010 WL 4922700 (D.P.R. Dec. 2, 2010).

Judgments regarding these Eighth Amendment claims, therefore, frequently are a matter of degree and often turn on the nature and extent of the alleged deprivation. However, here when we consider these particular Eighth Amendment dietary claims, we find that those claims relate to an alleged denial of 5 meals over a 26-day span. As a matter of law, such isolated incidents simply do not rise to the level of a constitutional infraction. <u>See, e.g.</u>, <u>Davis v. Miron</u>, 502 F. App'x. 569, 570 (6th Cir. 2012) (inmate denied seven meals over six days); <u>Zanders v. Ferko</u>, 439 F. App'x. 158, 160 (3d Cir. 2011) ("[T]he alleged deprivation of three meals over two days fails to rise to the level of a constitutional violation."); <u>Gonzales v.</u>

Martinez, 892 F.2d 1046 (9th Cir. 1990) (inmate denied breakfast and lunch for a three-week period but fed nutritionally adequate dinner); Cunningham v. Jones, 667 F.2d 565, 566 (6th Cir. 1982) (one meal per day for 15 days that provides sufficient nutrition to sustain normal health does not offend the Constitution); Adderly v. Ferrier, No. CIV.A. 07-507, 2010 WL 2636109, at *4 (W.D. Pa. June 29, 2010) (one meal per day for 7 days); Jackson v. Beard, No. 3:11-CV-1431, 2016 WL 3621279, at *10–11 (M.D. Pa. Mar. 31, 2016), report and recommendation adopted, No. 3:11-CV-1431, 2016 WL 3595790 (M.D. Pa. July 5, 2016), aff'd, No. 17-1192, 2017 WL 3327804 (3d Cir. Aug. 4, 2017) (inmate restricted to single meal per day on four consecutive days.).

Likewise, while in aggravated circumstances an inmate Eighth Amendment condition of confinement claims may be premised upon the denial of recreation privileges, see Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988), "[a]n inmate making a Eighth Amendment conditions of confinement claim must show that the alleged violation deprived him of the most minimal level of life's necessities, and that prison officials acted with deliberate indifference to his health or safety." Barkley v. Ricci, 439 F. App'x 119, 121 (3d Cir. 2011) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 304–05 (1991)). A

prisoner-plaintiff does not carry this burden of proof by merely showing that there were isolated instances in which his recreation privileges were curtailed. Id.

Judged by these legal benchmarks, Rosa-Diaz's Eighth Amendment claims relating to meal service and access to recreation privileges fail to state a cognizable Eighth Amendment violation as they are currently pleaded. As we have previously observed, during the 14 months that he was housed at SCI Camp Hill Rosa-Diaz alleges that he was denied recreation privileges on approximately 12 occasions due to disputes with staff regarding his attire, the condition of his cell, and his compliance with staff instructions. Rosa-Diaz alleges that this conduct rose to the level of cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. (Id., ¶¶37-105.) However, Rosa-Diaz does not allege any other interference with his recreation privileges during the remaining 415 days of his confinement at SCI Camp Hill. Similarly, between January 4 and January 30, 2017, disputes between Rosa-Diaz and staff over his footwear and apparel allegedly led staff to deny the plaintiff 5 meals over a 26 day period, conduct which Rosa-Diaz also asserts rose to the level of cruel and unusual punishment. (Id., ¶¶118-181.) Rosa-Diaz does not allege, however, that he was denied any other meals during this 26 day period. Given the exacting standards that govern Eighth Amendment claims in this field, these isolated and episodic incidents simply do not

rise to the level of a constitutional infraction. Therefore, these claims fail as a matter of law.

Finally, while this screening merits analysis calls for dismissal of a number of claims from this action, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint setting forth well-pleaded claims within the period of the statute of limitations. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court, by filing an amended complaint containing any timely and proper claims which he may have.

## III.    Recommendation

Accordingly, for the foregoing reasons, the plaintiff's request to proceed *in forma pauperis* is GRANTED, (Doc 2.), but  IT IS RECOMMENDED that the following claims be dismissed from the Plaintiff's complaint without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order:

1.    All claims for injunctive relief;

2.    All verbal harassment claims; and

3.    All Eighth Amendment claims premised on isolated restrictions on recreation and refusal of meals.

Once the Court has conducted a merits analysis of these claims lodged in the complaint against different defendants, IT IS FURTHER RECOMMENDED that the Court also consider exercising its discretion by following the course permitted by Rule 20, and dismissing any remaining, and apparently misjoined, claims in Rosa-Diaz's complaint without prejudice to Rosa-Diaz filing separate complaints relating to what seem to be factually distinct claims.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within

fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of December, 2017.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge