# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GABRIEL ROSA-DIAZ, | : | Civil No. 1:17-CV-2215 |
| | : | |
| Plaintiff, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| LAUREL HARRY, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

### I. Statement of Facts and of the Case

This is a *pro se* state prisoner civil rights lawsuit. One of the surviving claims in this case is an Eighth Amendment conditions of confinement claim brought by Rosa-Diaz who alleges that in March and April of 2017, while he was a state prisoner housed at the State Correctional Institution (SCI) Camp Hill, he was housed in a cell where "there were human feces inside the air conditioner and exhaust ventilations [in his new cell]; . . . the plumbing for the hot water did not work and plaintiff did not had [sic] access to hot water; . . . the exhaust air ventilation was broken and inoperative and; . . . the cell smelled of urine and feces." (Doc. 12-1, ¶ 36.)

With the issues in this litigation framed in this fashion, Rosa-Diaz has filed a motion to compel production of certain information from the defendants. (Doc. 43.) Included among these requests for production are three classes of information: First, Rosa-Diaz demands detailed photographs of his cell, ostensibly for the purpose of

demonstrating that the cell was in the filthy state described in his amended complaint. Second, Rosa-Diaz requests information relevant to whether another inmate, Anthony Morano, "was given a criminal case" for having allegedly thrown urine and feces at correctional staff through the ventilation system of the cell later occupied by Rosa-Diaz and whether correctional staff ever broke the plumbing in that cell. Finally, Rosa-Diaz asks for production of a strip search video of another inmate, Eric Maple, from June of 2017, some two to three months after this alleged incident. Rosa-Diaz seeks this information ostensibly because he believes that Maple refused at that time to enter the cell formerly occupied by Rosa-Diaz because of the lingering presence of human waste in the cell.

The defendants have responded to this motion to compel by challenging the relevance and discoverability of this information. In addition, the defendants indicate that: (1) they possess no information relating to criminal charges lodged against Inmate Anthony Morano; (2) they possess no photographs depicting the condition of Rosa-Diaz's cell in April of 2017; and (3) disclosure of the strip search video of Eric Maple would unduly and inappropriately invade the personal privacy of this third party, non-party inmate.

For the reasons set forth below, this motion to compel will be denied in part and granted in part as follows: The motion will be denied in all respects, except one. The defendants will be directed to notify Rosa-Diaz if any prison records or videos

reveal that inmate Maple complained about the condition of the cell formerly occupied by Rosa-Diaz shortly after Rosa-Diaz vacated that cell in the Spring and Summer of 2017.

## II. Discussion

### A. Motions to Compel—Guiding Principles

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The general scope of discovery is defined by Federal Rule of Civil Procedure 26(b)(1) in the following terms:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Issues relating to the scope of discovery permitted under Rule 26 rest in the

sound discretion of the court. Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin–Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). See Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *1 (M.D. Pa. Dec. 16, 2015). This broad discretion extends to discovery rulings by magistrate judges. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, when assessing discovery disputes we are enjoined that:

> "Discovery need not be perfect, but discovery must be fair." Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012) (Baylson, J.). "The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party." Hicks v. Arthur, 159 F.R.D. 468, 470 (E.D. Pa. 1995). "[T]he scope of [ ] discovery is not without limits." Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996). As such, "[d]iscovery should be tailored to the issues involved in the particular case." Id.

Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017).

Further, in making these judgments:

> To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014) (Fischer, J.). In ascertaining which materials are discoverable and which are not, a district court must further distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 191 (D.N.J. 2010), and demands that are "overly broad and unduly burdensome." Miller v. Hygrade Food Products Corp., 89 F.Supp.2d 643, 657 (E.D. Pa. 2000).

Id.

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570,

573 (D.Kan. 2009).

Furthermore, in a prison setting, inmate requests for information depicting the interior design of a jail can raise security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need to maintain confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental information against the rights of a civil rights litigant by considering:

> the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

Another immutable rule defines the court's discretion when ruling on motions to compel discovery. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See,

e.g., <u>AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.</u>, No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); <u>Knauss v. Shannon</u>, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009).

### B. **With One Exception, This Motion to Compel Will be Denied**

Guided by these legal tenets, with one exception discussed below, this motion to compel will be denied. Turning first to Rosa-Diaz's request for detailed photographs of the cell he occupied in 2017, the defendants object to this discovery demand on two grounds. First, they raise a relevance concern, arguing that they possess no photos depicting the condition of the cell in April of 2017. In addition, they assert institutional security concerns, contending that providing an inmate with detailed photos of the interior of cells can present a safety and security concern since it enables the prisoner to study structural details of the cell.

We agree. First, to the extent that Rosa-Diaz seeks photos depicting the condition of the cell in 2017, we understand that no such photos exist. These responses are clearly adequate, and, therefore, the motion to compel as to these matters will be denied. <u>Victor v. Lawler</u>, No. 3:08-CV-01374, 2010 WL 2326248, at *3 (M.D. Pa. June 2, 2010). In addition, release of these photographs to Rosa-Diaz prior to trial could create security concerns by allowing the prisoner an extended period in which to conduct a careful study of the structural features of the cell, although defendants have in the past ameliorated those concerns by agreeing to allow

an inmate access to cell photos at the time of trial for use at trial to provide a general perspective on the cell's layout. Smith v. Donate, No. 4:10-CV-2133, 2011 WL 5593160, at *1 (M.D. Pa. Nov. 17, 2011). Therefore, we will deny this request without prejudice to Rosa-Diaz seeking leave to use cell photos at trial.

Likewise, Rosa-Diaz has sought information concerning whether another inmate, Anthony Morano, "was given a criminal case" for having allegedly thrown urine and feces at correctional staff through the ventilation system of the cell later occupied by Rosa-Diaz and whether correctional staff ever broke the plumbing in that cell. The defendants assert that they have answered these questions to the best of their ability, that they possess no other information on these matters, and that information relating to criminal charges, if any, brought against inmate Morano are publicly available. We deem this response to be adequate and will compel no further production of this information in the instant case.

Finally, Rosa-Diaz asks for production of a strip search video of another inmate, Eric Maple, from June of 2017, some two to three months after this alleged incident. Rosa-Diaz seeks this information ostensibly because he believes that Maple refused at that time to enter the cell formerly occupied by Rosa-Diaz because of the lingering presence of human waste in the cell. We agree that production of a video of the strip search of another inmate, who is not a party to this lawsuit, which allegedly took place months after the events alleged by Rosa-Diaz would not be

relevant to the issues in this case and would violate the personal privacy of this inmate. Therefore, we will deny this request, as propounded by Rosa-Diaz. As we understand it, however, Rosa-Diaz is not seeking the video as much as he is searching for corroboration that his former cell was fouled with human waste. Contemporaneous complaints that this cell had been fouled by human waste would have some relevance to the issues presented in this lawsuit. Therefore, to the extent that videos or other evidence in the defendants' possession, custody or control reflects that inmate Maple complained about the condition of the cell formerly occupied by Rosa-Diaz shortly after Rosa-Diaz vacated that cell in the spring and summer of 2017 the defendants will be directed to notify Rosa-Diaz of the existence of those complaints.

 An appropriate order follows.

## III. Order

AND NOW this 4th day of December, 2018, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the plaintiff's motion to compel, (Doc. 43) is GRANTED, in part, and DENIED, in part as follows: The motion denied in all respects, except one. The defendants are directed to notify Rosa-Diaz if any prison records or videos reveal that inmate Eric Maple complained about the condition of the cell formerly occupied by Rosa-Diaz shortly after Rosa-Diaz vacated that cell in the spring and summer of 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge