IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GABRIEL ROSA-DIAZ, | : | Civil No. 1:17-CV-2215 |
| | : | |
| Plaintiff, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| LAUREL HARRY, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

### I. Statement of Facts and of the Case

This is a *pro se* state prisoner civil rights lawsuit. One of the surviving claims in this case is an Eighth Amendment conditions of confinement claim brought by Rosa-Diaz who alleges that in March and April of 2017, while he was a state prisoner housed at the State Correctional Institution (SCI) Camp Hill, he was housed in a cell where "there were human feces inside the air conditioner and exhaust ventilations [in his new cell]; . . . the plumbing for the hot water did not work and plaintiff did not had [sic] access to hot water; . . . the exhaust air ventilation was broken and inoperative and; . . . the cell smelled of urine and feces." (Doc. 12-1, ¶ 36.)

With the issues in this litigation framed in this fashion, Rosa-Diaz has filed a second motion to compel production of certain information from the defendants. (Doc. 77.) In this motion, Rosa-Diaz follows up on prior requests for production of videos or documents relating to a June 2017 incident involving another inmate, Eric

Maple, who allegedly refused at that time to enter the cell formerly occupied by Rosa-Diaz because of the lingering presence of human waste in the cell.

We previously found on December 4, 2018, that this information relating to other complaints about the conditions in this cell, made shortly after Rosa-Diaz vacated the cell, was potentially relevant to the issues raised in this lawsuit. Accordingly, we entered an order directing the defendants to notify Rosa-Diaz if any prison records or videos reveal that inmate Eric Maple complained about the condition of the cell formerly occupied by Rosa-Diaz shortly after Rosa-Diaz vacated that cell in the spring and summer of 2017. (Doc. 49.) Inmate Maple was later deposed and apparently corroborated the fact that he refused to enter the cell vacated by Rosa-Diaz because it was fouled by human waste. Thus, Maple has provided relevant information that corroborated Rosa-Diaz's claims regarding the condition of this cell.

It was against this backdrop that Rosa-Diaz filed in instant motion to compel, seeking discovery of prison videos or grievances involving inmate Maple which would further corroborate Maple's statements concerning his complaints regarding the condition of this cell in June of 2017. (Doc. 77.) The defendants have responded to this motion by arguing that Maple's testimony confirming his complaints regarding the condition of the cell fulfilled their discovery obligations under our December 2018 order. While we understand the defendants' potential confusion in

this regard, for the reasons set forth below we believe that Rosa-Diaz is entitled to the additional information he seeks. Therefore, this motion to compel will be granted.

## II. Discussion

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The general scope of discovery is defined by Federal Rule of Civil Procedure 26(b)(1) in the following terms:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 90

(3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin–Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). See Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *1 (M.D. Pa. Dec. 16, 2015). This broad discretion extends to discovery rulings by magistrate judges. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, when assessing discovery disputes we are enjoined that:

> "Discovery need not be perfect, but discovery must be fair." Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa.

2012) (Baylson, J.). "The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party." Hicks v. Arthur, 159 F.R.D. 468, 470 (E.D. Pa. 1995). "[T]he scope of [ ] discovery is not without limits." Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996). As such, "[d]iscovery should be tailored to the issues involved in the particular case." Id.

Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017).

Further, in making these judgments:

To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014) (Fischer, J.). In ascertaining which materials are discoverable and which are not, a district court must further distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 191 (D.N.J. 2010), and demands that are "overly broad and unduly burdensome." Miller v. Hygrade Food Products Corp., 89 F.Supp.2d 643, 657 (E.D. Pa. 2000).

Id.

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

With respect to Rosa-Diaz's conditions of confinement claim, a pivotal issue in this litigation is the condition of the cell vacated by the plaintiff in the Spring of 2017. We have already concluded that evidence provided by another inmate, Eric Maple, who staff attempted to place in that cell in June of 2017, was potentially relevant to this issue. Moreover, the parties apparently concede that Maple confirmed that the cell was fouled with human waste and he objected to entering the cell because of its condition. While this evidence is relevant, Maple's testimony, standing alone, does not in our view fully discharge the defendants' discovery obligations on this score.

As we noted in December of 2018 when we granted Rosa-Diaz's prior motion to compel:

> Rosa-Diaz is not seeking the video as much as he is searching for corroboration that his former cell was fouled with human waste. Contemporaneous complaints that this cell had been fouled by human waste would have some relevance to the issues presented in this lawsuit. Therefore, to the extent that videos or other evidence in the defendants' possession, custody or control reflects that inmate Maple complained about the condition of the cell formerly occupied by Rosa-Diaz shortly after Rosa-Diaz vacated that cell in the spring and summer of 2017 the defendants will be directed to notify Rosa-Diaz of the existence of those complaints.

(Doc. 49 at 9.)

Implicit in our December 2018 ruling was our finding that evidence of these complaints by inmate Maple would be relevant because it would tend to confirm the condition of the cell at about the time of the events which form the basis for Rosa-

6

Diaz's conditions of confinement claim. While our prior admonition that "the defendants . . . be directed to notify Rosa-Diaz of the existence of those complaints," may have been ambiguous, confused the defense, and led the defendants to believe that Maple's testimony, standing alone, fully discharged their discovery obligations, we believe that those discovery obligations are more extensive and call for the production of evidence confirming and corroborating Maple's testimony concerning his complaint regarding the condition of the cell. We reach this conclusion because we find at a minimum that this evidence may constitute a prior consistent statement by Maple, further confirming and corroborating his testimony that he made contemporaneous complaints regarding this condition of this cell shortly after Rosa-Diaz was removed from the cell. As a prior consistent statement, these reports and videos would arguably be relevant and admissible under Rule 801(d)(1)(B) of the Federal Rules of Evidence.

 Therefore, we now clarify our prior ruling. Finding that this evidence is potentially relevant and therefore discoverable, IT IS ORDERED that the defendants produce any videos, reports or other complaints describing the condition of this cell in their possession, custody or control within the next 30 days.

 An appropriate order follows.

### III. Order

AND NOW this 18th day of September 2019, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the plaintiff's motion to compel, (Doc. 77) is GRANTED as follows: Within the next 30 days the defendants are ORDERED to produce any videos, reports or other complaints which reveal that inmate Eric Maple complained about the condition of the cell formerly occupied by Rosa-Diaz shortly after Rosa-Diaz vacated that cell in the spring and summer of 2017, along with any videos, reports or complaints which describe the condition of this cell in the spring or summer of 2017, that are in their possession, custody or control.

*S/Martin C. Carlson*<br>Martin C. Carlson<br>United States Magistrate Judge